GEORGE C. MAGOUN et al., Appellants, *v.* FRANCIS S. SINCLAIR et al., Respondents.

Plaintiffs discounted certain bills of exchange drawn by defendants upon A. & N., of Liverpool, secured by bills of lading of shipments of corn consigned to A. & N. under an agreement that if the bills of exchange were accepted by the drawees and the acceptances were satisfactory to plaintiffs' correspondents, the bills of lading were to be delivered up to the consignees. If the bills of exchange were not accepted, or if the acceptances were not satisfactory, said correspondents were authorized to place the corn in the hands of brokers, to be selected by them, for sale, the proceeds to be applied to pay the bills of exchange. The consignees, after the arrival of the corn, and before the maturity of the said bills, had contracted for its sale through C. & Co., brokers. When the bills reached Liverpool they were presented and accepted, plaintiffs' correspondents, however, retaining the bills of lading. The consignees procured and filled out blanks for undertakings, which were signed by C. & Co., by which, in substance, they agreed to hold the bills of lading and the corn in trust to secure the payment of the bills of exchange and to apply the proceeds for that purpose. Each of these undertakings were indorsed "The within engagement signed at our request," which was signed by A. & N. Upon receipt thereof plaintiffs' correspondents delivered up the bills of lading to C. & Co., who sold the corn, misapplied the proceeds, and thereafter failed. In an action upon the bills of exchange, *held*, that it was to be inferred that plaintiffs' correspondents were not satisfied with the acceptances; that the acceptors could, within the terms of the agreement, make the acceptances satis-

factory in any of the usual modes, of which it appeared that the giving of such undertakings was one; that the indorsements upon the backs thereof were equivalent to requests on the part of A. & N., plaintiffs' correspondents, to deliver the bills of lading to C. & Co. upon receipt of the undertakings; that C. & Co. were the brokers of A. & N., and a delivery of the bills of lading to the former was in effect a delivery to the latter, and that defendants were liable.

· (Argued April 6, 1876; decided April 18, 1876.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York affirming a judgment in favor of defendants, entered upon a verdict.

This action was brought upon three bills of exchange drawn by defendants upon Adlington & Nicholson, of Liverpool, payable in London at sixty days after sight.

The defendants, Sinclaire & Marvin, the drawers of the bills, were merchants doing business in New York, and were engaged in buying and shipping corn from this country to Liverpool. Adlington & Nicholson, the drawees of the bills, were merchants in Liverpool, and the sole agents and correspondents, or consignees, there of the defendants. In May, 1872, Sinclaire & Marvin made shipments of corn by the steamers "Canada," "Caspian," and "Republic," consigned to Adlington & Nicholson, and receiving bills of lading therefor. They then drew the bills of exchange in question, which plaintiffs discounted, the bills of lading being attached as collateral security. The plaintiffs were bankers, and it was in the course of their business to buy exchange with collaterals of the character described, and they, in discounting these bills of exchange, required of Sinclaire & Marvin, in each case, another document called a letter of hypothecation. These letters of hypothecation were signed by Sinclaire & Marvin ; they bear the same date as the several bills of exchange ; they were addressed to plaintiffs' correspondents, McCalmont Bros. & Co., in London. They recited the sale of the bills of exchange to plaintiffs, against the shipments

named, and they authorized the giving up the bills of lading to acceptors, if their acceptance should be satisfactory, If the drawees declined to accept, or if their acceptance was not satisfactory, then McCalmont Bros. & Co. were authorized to place the bills of lading in the hands of their own brokers, for sale, on account of whom it might concern. The plaintiffs at once forwarded the bills of exchange, with the bills of lading and letters of hypothecation, to McCalmont Bros. & Co. McCalmont Bros. & Co. received the documents in due course of mail, and as the drawers were in Liverpool and the shipments were made to Liverpool, the papers were all forwarded from London to C. Saunders & Co., the agents of McCalmont Bros. & Co. in Liverpool. The several bills of exchange were presented to the drawees at Liverpool, for acceptance, and were duly accepted by them on the twenty-fifth, twenty-seventh and twenty-eighth days of May, respectively, payable at a banking-house in London, sixty days after acceptance. The corn also arrived at Liverpool at about the same dates. After its arrival, Adlington & Nicholson, through Campbell & Co., brokers, contracted for its sale. No demand was made by the acceptors upon the agents of plaintiffs for the corn or the bills of lading. Mr. Adlington testified that on the arrival of the several vessels with shipments, against which the said bills of exchange were drawn, he sent to Campbell & Co. " forms of undertaking to hold the proceeds of the sale of such shipments, to secure the payment of said bills of exchange, for signature ;" of one of which undertakings the following is a copy :

" Messrs. McCalmont Brothers & Co., London, per C. Saunders & Co., Liverpool. (Stamp : Adlington & Nicholson, Liverpool.) In consideration of receiving from you bill of lading for 7,116 bags = 21,199 bushels Indian corn, ex ' Canada,' $    New York, held by you as security for payment of Adlington & Nicholson's acceptance of Sinclaire & Marvin's draft for £3,000 9s. 8d., due twenty-seventh July, we hereby engage to hold said bill of lading, the property therein represented, and the net proceeds thereof, in trust, to

secure the payment of the said bill; and we undertake, in case any part of the bill be not paid at maturity, to realize immediately so much of the property as may be required to liquidate said bill; and we acknowledge it to be our full understanding and agreement that till said bill be paid we will not part, except to the purchasers thereof, in accordance with the customary course of business, with said bill of lading and property for any purpose whatever, but will retain the entire control of them, except as aforesaid; and, further, that we will specifically apply the proceeds of all sales, immediately on their receipt, to the liquidation of the said bill, until full satisfaction thereof. We further undertake to insure the said property against all fire risks, and, in the event of loss, to apply the insurance money in like manner as the proceeds of sales. Liverpool, 27th May, 1872.

"CHARLES CAMPBELL & CO."

Adlington & Nicholson indorsed each of these undertakings thus:

"The within engagement given at our request.

"ADLINGTON & NICHOLSON."

These undertakings signed by Campbell & Co. were delivered to Saunders & Co., who thereupon delivered to Campbell & Co. the bills of lading, and took back a receipt for the same, indorsed upon the undertakings. Adlington testified that "the usual course of trade was followed in these transactions." Campbell & Co., after procuring the bills of lading, delivered the corn to the purchasers, pursuant to the contracts of sale, collected the proceeds of sales, but misappropriated them, and failed; the bills of exchange not being paid in full at maturity, were duly protested for non-payment, and were returned to the plaintiffs.

Plaintiffs' counsel requested the court to charge the following propositions, among others: That the defendants had not in any sense proven, or that the evidence did not establish, an appropriation or sale of the corn in question by plaintiffs or

their brokers; that the taking of the broker's contract on the part of the agents in Liverpool, Saunders & Co., simply perpetuated the lien or pledge of the merchandise covered by the bills of lading; that as Adlington & Nicholson requested Saunders & Co. to deliver the bills of lading to Campbell & Co., the delivery was brought within the authority of the letters of hypothecation.

The court declined so to charge, and the plaintiffs' counsel duly excepted.

The plaintiffs' counsel then asked the court to charge that Campbell & Co. took the bills of lading in the interest of Adlington & Nicholson, and for the purpose of carrying out the contracts of sale made for Adlington & Nicholson's account; that the trust created by the broker's contract or guaranty was a trust in favor of the acceptors, as well as in favor of the plaintiffs. The acceptors were liable upon their acceptances, and Campbell & Co. were, in reality, acting for their benefit; that the broker's guaranty was taken simply as collateral security for the bills of exchange.

The court declined so to charge, and plaintiffs' counsel duly excepted.

Further facts appear in the opinion.

*E. T. Rice,* for the appellants. Plaintiffs' liability in respect to the corn was that of pledgees. (*Bk. of Rochester* v. *Jones,* 4 N. Y., 497; 2 Kent's Com. [m. p.], 578; 2 Pers. on Con., 110.) The court erred in refusing to charge that Sinclaire & Marvin and Adlington & Nicholson were copartners in the corn transactions in question. (*Smith* v. *Wright,* 1 Abb., 243; *Eldridge* v. *Troost,* 3 id., 20; *Leggett* v. *Hyde,* 47 How. Pr., 524; *F. and M. Bk.* v. *B. and D. Bk.,* 16 N. Y., 125.) Plaintiffs were bound to exercise ordinary care only. (2 Kent's Com., [m. p.], 578; 2 Pars. on Con., 110; *Coml. Bk.* v. *Martin,* 1 La. An., 344.)

*Thos. V. Cator* for the respondents. Defendants and Adlington & Nicholson were not copartners. (*Pattison* v

*Blanchard*, 5 N. Y., 186; *Merrick* v. *Gordon*, 20 id., 93.) Defendants had the affirmative of the issue. (*Huntington*, v *Conkey*, 33 Barb., 218; *Ayrault* v. *Chamberlain*, id., 229.)

EARL, J.   An agreement was made at the time the bills passed into the hands of the plaintiffs, which must control the rights of the parties.   By that agreement if the bills of exchange were accepted, and the acceptances were satisfactory to McCalmont Brothers & Co., plaintiffs' London correspondents, the bills of lading were to be delivered up to the acceptors, who were consignees of the corn, and in that event plaintiffs would have to rely solely upon the personal responsibility of the drawers and acceptors for the payment of the drafts. But if the drawees declined to accept, or if they accepted, and the acceptances were not satisfactory, the plaintiffs' correspondents were authorized, at their discretion, to place the corn in the hands of brokers to be selected by them for sale, and they were required to apply the proceeds in payment of the bills.   In the latter event plaintiffs could look to the drawers and acceptors only for the deficiency after applying the proceeds of the corn.

All the corn had been contracted to be delivered by the consignees, at different times, after its arrival in Liverpool, and before the maturity of the bills of exchange, and the defendants and their consignees were under obligation to fulfill these contracts.   And it was expected, by both the drawers and acceptors, that the proceeds of the corn realized by delivery upon the contracts, would furnish the funds to pay the bills.   Hence it was important that the consignees should at once control the bills of lading, and they were clothed with the usual and customary authority to obtain them.   If plaintiffs' correspondents were not satisfied with their simple acceptances of the bills, the acceptors could, within the terms of the agreement upon which plaintiffs took the bills, make the acceptances satisfactory in any of the usual modes.   And they could arrange for the delivery of the bills of lading to their own brokers employed to deliver the grain upon the contracts.

That is, after the acceptors had made their acceptances satis-
factory, a delivery of the bills of lading to any other person
or firm upon their order or request, would be the same as a
delivery to them.

When the bills reached Liverpool they were presented for
acceptance, and were accepted, and we may infer, from the
fact that plaintiffs' correspondents retained the bills of lading,
that they were not satisfied with the acceptances alone, although
there is no express proof of any dissatisfaction, and no proof
that the acceptors upon acceptance asked for the bills of lading.
When the corn arrived the consignees procured from plain-
tiffs' correspondents blanks, which they filled up for what is
called the guaranties. They affixed their stamps to the instru-
ments thus filled up, and wrote on the backs of them, over
their signatures, the words, " The within engagement given at
our request." They delivered these instruments to Campbell
& Co., and Campbell & Co. delivered them to plaintiffs' cor-
respondents and received the bills of lading. Whose brokers
were Campbell & Co. ? Not plaintiffs. Their correspondents
held the bills of lading, and the bills of exchange were per-
fectly secure. It was not for their benefit that the bills of
lading were given up. The arrangement which resulted in
giving them up was made for the benefit of the defendants
and their consignees. Plaintiffs' correspondents had had no
relations with Campbell & Co., but they had acted as brokers
of the consignees, and had made the contracts for the future
delivery of this corn. The consignees procured them to sign
these instruments, and they stated on the backs of them that
the instruments were executed by Campbell & Co., at their
request, and that amounted to a request to plaintiffs' corres-
pondents to deliver to them the bills of lading upon the receipt
of the instruments. Plaintiffs' correspondents were not to
control the brokers nor dictate, as they could if they had
employed them, to whom and upon what terms they should
sell the corn. They were, by the arrangement with the con-
signees, to deliver the corn upon the contracts previously
made. This was the mode taken by the consignees to make

their acceptances satisfactory, and it appears in the evidence to have been a customary mode. Plaintiffs' correspondents had thus parted with the bills of lading and placed them beyond their control, and the delivery to Campbell & Co., upon the request of the consignees, was, in effect, a delivery to the consignees.

After plaintiffs' correspondents had thus parted with the bills of lading, they had, as security for the payment of the bills, the drawers and acceptors, and the guaranties signed by Campbell & Co. The failure of Campbell & Co. to perform their agreement in no way affects plaintiffs' claims against the parties to the bills. It is not true that Campbell & Co. are not liable to account to the defendants. They did render the account of the sales of the corn to the consignees, thus showing whose brokers they understood they were. They received defendants' corn upon an agreement that they would dispose of it and apply the proceeds in discharge of defendants' liability, and having failed to perform this agreement, the defendants can call them to account.

We are, therefore, of opinion, upon the documents and undisputed evidence, that the plaintiffs were entitled to recover, and the judgment appealed from must be reversed, and new trial granted.

All concur.

Judgment reversed.